Joseph A. Balint v. Commissioner.
Balint v. Commissioner
Docket No. 40908.
United States Tax Court
1954 Tax Ct. Memo LEXIS 290; 13 T.C.M. (CCH) 184; T.C.M. (RIA) 54062; February 26, 1954
*290 1. Held, petitioner received additional income in the years 1943 to 1949, inclusive, which he failed to report on his returns for those years. 2. Held, further, his failure to report the amounts of additional income on his returns was due to fraud with intent to evade tax. Thomas J. Kennedy, Esq., 663 Main Ave., Passaic, N.J., for the petitioner. John E. Mahoney, Esq., for the respondent. RICE
Memorandum Findings of Fact and Opinion This proceeding involves deficiencies in income tax and penalties, as follows: Year
Income Tax
50% Penalty
1943
$ 501.59 *
$ 250.80
1944
1,108.23
554.12
1945
880.82
440.41
1946
1,960.11
980.06
1947
377.00
188.50
1948
84.00
42.00
1949
91.00
45.50
The issues to be determined are: (1) did petitioner understate the amount of his net taxable income on returns which he filed for the years 1943 to 1949, inclusive; (2) if so, were such understatements due to fraud with intent to evade tax thus removing the bar of the statute of limitations against assessment and collection for the years 1943 to 1948, inclusive; and (3) if not due to fraud, was such understatement *291 for the year 1947 in excess of 25 per cent of the amount of gross income reported on Form W-2 so as to invoke the 5-year statute of limitations under section 275 (c) of the Code. Some of the facts were stipulated. Findings of Fact The stipulated facts are so found and are incorporated herein. Joseph A. Balint (hereinafter referred to as the petitioner) resided at 80 Fourth Street, Passaic, New Jersey, during the years here in question. He filed individual returns on Forms 1040 for 1943, 1948, and 1949, and on Forms W-2 for the years 1944 to 1947, inclusive, with the collector of internal revenue at Newark, New Jersey. Petitioner was born in 1913. For some time prior to 1933, he was in a C.C.C. camp. From 1933 to October 1936, he was unemployed. He was married in 1935. His wife was born in 1915. She was employed by a handkerchief manufacturing company until February 1936, when her first child was born. From May until October 1936, petitioner was on relief. Thereafter, until March 1938, he was employed by the U.S. Rubber Company. His wife was also employed in 1937, at the handkerchief factory where she earned $20 per week. She stopped work in 1938 because of the birth of a second *292 child. Petitioner was again on relief during March and April 1938. He was employed by the W.P.A. during most of 1939. For approximately a year following their marriage, petitioner and his wife lived with her mother. They paid her about $10 per week for room and meals. The following year they lived on Third Street, in Passaic, in a 2-room, cold-water flat, for which they paid $8 per month. They next moved into a 3-room, cold-water flat on Fourth Street, renting for $10 per month; then to a 4-room, cold-water flat on Freeland Avenue, renting for $14 per month. Six months later they moved into a $14 per month cold-water flat, at 80 Fourth Street, where they continued to reside until they completed a home in 1951. Petitioner's wife made most of the clothes which the family wore. In 1939 petitioner was again employed by the U.S. Rubber Company. His employment continued from that time throughout all the years before us. Petitioner's net take-home pay, after deductions for withholding of income and social security taxes, and unemployment insurance, was as follows: Year
Net Take-Home Pay
1939
$ 283.50
1940
1,179.59
1941
1,670.45
1942
1,901.72
1943
2,941.16
1944
2,801.94
1945
2,666.70
1946
2,765.62
1947
2,434.66
1948
2,650.99
1949
2,647.65
*293 Petitioner's wife again worked at the handkerchief factory from sometime in 1938 until the beginning of 1943. She earned $20 per week. During the years here in issue, petitioner owned a series of three second-hand Willys automobiles for each of which he paid approximately $20. At the time of trial he had owned, for three years, a 1941 Plymouth, for which he paid $265. Petitioner or his wife maintained the following bank accounts: Date Opened
Depositor
Bank
Feb. 3, 1940
Violet Tetla (wife's maiden name)
Peoples Bank & Trust Co.
May 27, 1940
Joseph Balint
Peoples Bank & Trust Co.
July 2, 1943
Mrs. Joseph Balint
Passaic Nat'l Bank & Tr. Co.
Oct. 1, 1945
Mrs. Violet Balint
Peoples Bank & Trust Co.
July 19, 1946
Joseph Balint or Violet D. Balint
First Savings & Loan Ass'n of
Fair Lawn
They made total deposits in and withdrawals from such accounts, received interest on monies held therein, and made U.S. Savings Bond purchases as follows: Year
Deposits
Withdrawals
Interest
Bond Purchases
1943
$1,420.00
$ 50.00
$ 4.19
$ 543.75
1944
2,529.00
1,174.00
9.63
2,493.75
1945
3,406.11
370.00
20.44
956.25
1946
4,615.18
554.82
79.66
3,562.50
1947
1,091.03
26.48
172.60
1,181.25
1948
412.44
167.55
75.00
1949
25.00
200.00
173.47
487.50
*294 The U.S. Savings Bonds were purchased in petitioner's own name, or his wife's, or children's names. None of the bonds were redeemed or cashed during the period here in issue. On June 20, 1947, petitioner's wife rented a safe-deposit box from the Passaic-Clifton National Bank & Trust Company, under the name of Mrs. Violet Tetla. On June 6, 1949, the name was changed to Mrs. Violet Balint, and petitioner's name was added as co-depositor. Petitioner received refunds on his income tax payments in the following amounts: Income Tax
Amount of
for Year
Refund
1944
$12.22
1945
8.90
1946
11.03
1947
10.20
1948
35.35
Petitioner frequently helped a friend "cut" dice games in a public park during all of the years in question. He received a percentage of all bets made in such games. On his returns for the years before us, petitioner reported only the amount of his gross wages from the U.S. Rubber Company. Respondent determined deficiencies on the assumption that petitioner's living expenses equaled his gross wages; and that bond purchases and bank deposits disclosed unreported additional income, in the following amounts: Amount of
Year
Unreported Income
1943
$1,742.94
1944
4,766.85
1945
4,355.19
1946
8,234.09
1947
2,347.42
1948
571.69
1949
600.58
*295 Respondent determined that the deficiencies were due to fraud with intent to evade tax, and asserted the 50 per cent penalty for each year. Petitioner's living expenses were $1,100 for the years 1943-1945, inclusive. Such expenses were $1,200 in 1946; $1,400 in 1947; and $1,450 in both 1948 and 1949. He received the following amounts of income which he did not report on his returns: Year
Amount
1943
$ 76.78
1944
2,156.44
1945
2,433.88
1946
6,128.00
1947
1,372.71
1948
328.55
1949
309.47 His failure to report a part of such amounts was due to fraud with intent to evade taxes. Opinion RICE, Judge: Petitioner has attempted to explain the difference between his moderate, reported income and the sizable amounts of bond purchases and bank deposits by claiming that he and his wife had saved some $11,000 prior to 1943. Petitioner was 20 years old in 1933. Prior to that time he had been in a C.C.C. camp. He was unemployed until October 1936. He and his wife were married in 1935; she was then 20. Petitioner tells us that, at the time of their marriage, he had saved $3,200; and that his wife had saved $2,300. The nature of their employment is not shown, nor *296 their annual earnings. Petitioner and his family were on relief from May to October 1936; and again in March and April 1938. He was employed by the W.P.A. during most of 1939. After their marriage, his wife worked intermittently at a handkerchief factory, where she earned $20 per week. Two children were born - one in 1936, and another in 1938. Petitioner's take-home pay from working at the U.S. Rubber Company plant was $283 in 1939; $1,180 in 1940; $1,670 in 1941; and $1,900 in 1942. Against this background of depression years, it is impossible for us to believe that petitioner and his wife, no matter how frugal, could have held savings of $11,000 in a small metal box at the beginning of 1943. During the years before us, we have found that petitioner received sizable amounts of income which he did not report on his returns. In reaching that determination, we have deducted from his take-home pay and income tax refunds, an allowance for living expenses. The balance has been offset against total bank deposits (less withdrawals), interest paid thereon during the period, and bond purchases. The allowance for living expenses is not large for a family of four, with growing children. *297 However, petitioner's wife made most of the family's clothes; they paid rent of only $14 per month for the cold-water flat in which they lived. The balance which remained seems adequate to cover their other necessities of life based on their scale of living. Petitioner frankly admitted the receipt of income during all the years in issue from assisting in the operation of dice games. He claims that earnings from this source, however, were less than $200 in any one year. We know of this one possible source of additional income. There may have been others. Whatever the sources of the unreported amounts of income may have been, the size of them and petitioner's consistent failure to report them, indicate to us a clearly fraudulent intent to defraud the Government of taxes due. Such sums are understatements of income of: 2.4 per cent in 1943 69.6 per cent in 1944 83.2 per cent in 1945 206.8 per cent in 1946 53.8 per cent in 1947 11.9 per cent in 1948 and 11.4 per cent in 1949 Substantial discrepancies between real and reported income over a period of years is strong and persuasive evidence of an intent to defraud the *298 (C.A. 6, 1940). While the amounts of income understated on the returns for the years 1943, 1948, and 1949 are not large, we are satisfied that the fraudulent intent, so plain in other years, is present there as well. There is no difference in those years and other years in the pattern of petitioner's handling of income from unreported sources. Petitioner admitted receiving some additional income in every year from "cutting" dice games. He also received interest on bank deposits in all years. Our method of determining the amount of unreported income for each of the years 1948 and 1949 indicates that the reported income for each of such years, after deducting an allowance for living expenses, was larger than the bank deposits (less withdrawals) plus bond purchases made in those years. However, our estimate of petitioner's living expenses, for all of the years in question is, necessarily, only an approximation; and, notwithstanding the fact that in 1948 and 1949 our allowance of $1,450 for such expenses in those years results in a reported income figure in excess of the bank deposits (less withdrawals) plus bond purchases, we have found that petitioner had unreported income of $328.55 *299 in 1948 and $309.47 in 1949. These sums are the admitted amounts of income which he received from "cutting" dice games and the interest on bank deposits, neither of which were reported on his returns for those years. Petitioner claims that he kept his earnings from the dice-game operations in a separate box, and that when he made withdrawals he put a slip into the box indicating the amount taken out. If any such tabulation or record was maintained, so much more the reason he should have reported his earnings from this source. We think the respondent has borne his burden of proving, by clear and convincing evidence, that the petitioner's income during all of the years before us was fraudulently understated. The finding of fraudulent intent in reporting income for all years makes unnecessary our determination of respondent's alternative plea with respect to the omission of gross income in excess of 25 per cent for the year 1947. Decision will be entered under Rule 50. Footnotes
*. Income and Victory Tax.↩